## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **MARCELLUS WILLIAMS,** | : | Case No. 15-70 |
| **#163729** | : | |
| Potosi Correctional Center | : | |
| Missouri Department of Corrections | : | |
| 11593 State Highway O | : | |
| Mineral Point, MO 63660 | : | |
| | : | |
| *Plaintiff,* | : | |
| **v.** | : | |
| | : | |
| **ROBERT P. MCCULLOCH**, Prosecutor, | : | |
| St. Louis County | : | |
| 100 South Central Avenue, 2nd Floor | : | |
| St. Louis, MO 63105 | : | |
| | : | |
| **IN HIS OFFICIAL CAPACITY** | : | |
| *Defendant*. | : | **Execution Is Scheduled For** |
| | : | **January 28, 2015** |
| | : | **@ 12:01 a.m.** |

## MOTION FOR PRELIMINARY INJUNCTION – STAY OF EXECUTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the All Writs Act, 28 U.S.C. § 1651, Plaintiff Marcellus Williams respectfully requests a preliminary injunction barring his execution until this Court has the opportunity to decide the merits of this case.

## INTRODUCTION

This civil rights action for violation of state and federal civil rights pursuant to 42 U.S.C. §1983 arises from the Defendant's refusal to release biological

evidence in their possession for the purposes of deoxyribonucleic acid ("DNA") Short Tandem Repeat ("STR") and Y-STR testing. Such testing could provide exculpatory evidence that Plaintiff Marcellus Williams was wrongfully convicted and wrongfully sentenced to death for the 1998 home invasion and murder of Felicia Gayle.

Marcellus Williams faces execution on January 28, 2015, for a crime that he did not commit and for which he was wrongfully convicted and sentenced to death in 2002. Mr. Williams has always staunchly maintained his innocence and continues to do so today. Mr. Williams' constitutional rights are implicated by the Defendant's refusal to conduct DNA testing.

The biological evidence that Mr. Williams seeks to subject to DNA testing was originally collected during the investigation of the crime for which he was convicted and remains in the possession of and control of the Defendant and officers of the State of Missouri. The evidence currently in the State's custody and the manner of testing needed is as follows:

    i.  STR and Y-STR testing of the fingernail clippings of the victim.

    ii.  STR and Y-STR testing of State's Exhibit 90, a knife and the murder weapon.

    iii.  An examination of the hairs removed from the victim's body for biological material, and submission of any available biological material for STR testing.

    iv.  An examination of the hairs and pubic hairs recovered from rug upon which the victim was laying for biological

material, and submission of any available biological material for STR testing.

STR and/or Y-STR DNA testing on the above items is capable of proving that Mr. Williams is actually innocent. If STR DNA testing of this biological evidence reveals a profile that exclude Mr. Williams, these results could be placed into the national DNA databank system known as CODIS and could identify the actual perpetrator of the crime. Further, if the biological evidence reveals a profile from either STR or Y-STR testing, that profile can be compared to any testing conducted in a similar *modus operandi* crime that the St. Louis Coroner Dr. Mary Case noted possessed extraordinary similarities with Ms. Gayle's homicide.[1]

The Defendant has refused to release the evidence for this testing, in violation of Mr. Williams' Fourteenth Amendment right to procedural due process, that protect him from arbitrary deprivation of life and liberty by the state. By denying Mr. Williams' access to this evidence, the Defendant is effectively blocking his right of meaningful access to the courts. Furthermore, this denial of access is in violation of Mr. Williams' Sixth Amendment right to confrontation and compulsory process, his Eighth Amendment right prohibiting cruel and unusual

---

[1] Dr. Case was commenting on the murder of Debra McClain in the adjoining suburb of Pagedale. Exhibit 1. "Dr. Case was struck by the similarity of both cases" based on the age and build of victims, the type of fatal and defensive injuries, the similarity of the crime scenes, and the proximity of the scenes. "Dr. Case was especially concerned with the unusual factor of the victim being found with the knife still in her body. She noted ths aspect of a stabbing death is extremely rare." *Id.*

punishment, and his due process right to meaningful review for executive clemency.

With the January 28, 2015 execution date approaching, Mr. Williams now seeks a preliminary mandatory injunction ordering (1) that Mr. Williams' execution be STAYED. This would allow matters to proceed which would allow (1) the Defendant release the evidence collected in connection with the crimes for which he was convicted and transfer such evidence to a State lab for immediate testing; (2) upload all CODIS-eligible profiles into the CODIS database; and (3) compare all profiles to any profiles developed in the investigation of the Pagedale murder.

**I. THIS COURT HAS THE POWER TO ENTER A PRELIMINARY INJUNCTION ORDERING DEFENDANTS TO RELEASE MATERIAL FOR TESTING**

The granting or denial of a preliminary injunction is committed to the sound discretion of this Court. "The primary function of a preliminary injunction is to preserve the *status quo* until, upon final hearing, a court may grant full, effective relief." *Kansas City So. Transp. Co., Inc. v. Teamsters Local Union # 41*, 126 F.3d 1059, 1066 (8th Cir. 1997) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, (2008).

In the Eighth Circuit, these four factors are known as the "*Dataphase*" factors, which have been articulated as follows: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). While "no single factor is determinative," *id.*, the probability of success factor is the most significant. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). The factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

**A. Mr. Williams Has A Strong Likelihood Of Success On The Merits**

To show a likelihood of success on a particular claim, Mr. Williams need not "prove a greater than fifty percent likelihood that [it] will prevail," *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007), but rather must only show that the claim provides a "fair ground for litigation." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *accord, e.g., Planned Parenthood Minn., N. D.,*

*S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (movant must show it has a "fair chance of prevailing").

Mr. Williams' complaint makes out a strong case for relief under 42 U.S.C. §1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Williams easily satisfies both of these requirements, under the applicable less than a preponderance "fair ground for litigation."

The Defendant has refused to release the evidence for DNA testing. By denying Mr. Williams' access to this evidence, defendants have: (1) deprived Mr. Williams of due process of law, in violation of his Fourteenth Amendment right to procedural due process protecting him from arbitrary deprivation of life and liberty by the state; (2) deprived Mr. Williams of the opportunity to effectively litigate his claim that he is innocent of the crime for which he is currently incarcerated, thereby depriving him of meaningful access to the state and federal court to obtain legal relief, in violation of the due process and equal protection guarantees of the Fourteenth Amendment; (3) deprived Mr. Williams of the opportunity to make a conclusive showing that he is innocent of the crime for which he is incarcerated, in violation of the due process clause of the Fourteenth Amendment and the cruel and

unusual punishment clause of the Eighth Amendment; (4) deprived Mr. Williams of his right to present evidence of innocence in state and federal court, and before the Missouri Parole Board, in violation of the confrontation and compulsory process clauses of the Sixth Amendment; and (5) deprived Mr. Williams of his right to avail himself of the opportunity to apply for executive clemency and the function that executive clemency serves in preventing the violation of his constitutional rights that would arise from continued incarceration of an inmate who can make an actual showing of innocence.

Second, the Defendant has clearly acted under color of state law. A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *West*, 487 U.S. at 50.

The likelihood for success in this action is extremely high given the Supreme Court's decision in *Skinner v. Switzer*, 562 U.S. 521 (2011). Mr. Williams' case is not distinguishable from *Skinner*, and *Skinner* ultimately received a remand for the lower courts to determine the merits of his 1983 action. Given the holding and remedy in *Skinner*, the likelihood that Mr. Williams will prevail is extremely high, and has, at minimum, established that he has a "fair chance of prevailing."

**B. Plaintiff Would Otherwise Suffer Irreparable Injury.**

Mr. Williams is scheduled to be executed on January 28, 2015. The State possesses evidence that could prove his innocence of the crime for which he was convicted, yet the State refuses to test that evidence or even to release the evidence to Mr. Williams for him to test it.  If he is executed, he suffers irreparable harm in that he is dead and the evidence that may exonerate him remains untested.  *See Kai v. Ross*, 336 F.3d 650, 656 (8th Cir. 2003) ("[T]he danger to plaintiffs' health, and perhaps even their lives, gives them a strong argument of irreparable injury.").

**C. Preliminary Injunction Would Not Cause Substantial Harm To Others.**

The State is not harmed by ensuring the public that the right person is executed.  The minimal delay to allow the testing does not represent a cost that is a substantial harm to the State because a thorough investigation of crimes is one of the most fundamental duties of the State in our society. Particularly in this case, where there is no physical evidence, the testing conducted (to this point) excludes Mr. Williams, there is no confession and the State relies upon two unworthy snitches. Because there are so many questions raising concerns of Mr. Williams' actual innocence, the State is certainly not harmed by conducting a thorough investigation of all the evidence in its possession before it carries out an irrevocable when executed death sentence.

Further, the State's interest in finality would not be harmed by the grant of a preliminary injunction because the relief Mr. Williams seeks is limited to the

release of evidence for DNA testing and running any developed profiles through a database and a comparison to profiles developed in another case. If such testing occurs, this action will terminate, and the consequences of the results— whether inculpatory, exculpatory, or inconclusive— will be determined in separate proceedings. The State's right to argue that any DNA results should not affect Mr. Williams' death sentence is not harmed by the granting of the preliminary injunction Mr. Williams requests; its right to argue the meaning of the results is preserved and not impacted by the instant action.

**D. The Public Interest Would Be Served By Issuing A Preliminary Injunction.**

The public interest is served by granting Mr. Williams the DNA and other forensic testing he requests. The public has an interest in only executing guilty persons; this testing will show whether the aforementioned evidence contains a DNA profile of some other person whose profile is in CODIS, no person's DNA, or DNA that cannot be identified. If the State and Defendant are confident Mr. Williams is the true perpetrator, it should be confident that any DNA on the evidence recovered from the crime scene will match Mr. Williams and will actually inculpate him. Thus no public interest is served by denying Mr. Williams access to DNA testing, which occurs if he is executed.

**II. ALTERNATIVELY, THIS COURT HAS THE POWER TO ENTER A PRELIMINARY INJUNCTION IMPOSING A STAY OF EXECUTION UNDER THE ALL WRITS ACT.**

If this current suit cannot come to completion, there is an alternative basis for a stay of execution. "A death sentence cannot begin to be carried out by the State while substantial legal issues remain outstanding." *Barefoot v. Estelle*, 463 U.S. 880 (1983). Once substantial legal issues are raised, a petitioner is "entitled to a stay of execution to permit due consideration of the merits" if the claims cannot be resolved prior to the scheduled date of execution. *Id.*

The All Writs Act authorizes "[t]he Supreme Court and all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). The Supreme Court has interpreted the All Writs Act to allow federal courts to "avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *United States v. New York Telephone Co.*, 434 U.S. 159, 172-73 (1977). Indeed, unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942).

A preliminary injunction under the All Writs Act is necessary to preserve the integrity of these proceedings and this Court's jurisdiction to decide this case, and so this Court can enforce its judgment. The need for this Court to issue an

injunction to preserve its jurisdiction distinguishes an injunction under the All Writs Act from other injunctions in that this Court can grant the injunction without evaluating the four factors applicable to traditional injunctions. *See*, *e.g.*, *Klay v. United Healthgroup*, *Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *see also*, *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (affirming grant of injunction under the All Writs Act without regard to the traditional four fact test to determine whether to grant an injunction); *De Beers Consol Mines*, *Ltd. v. United States*, 325 U.S. 212, 219 (1945) (stating, in reviewing a death lower court's ruling concerning an injunction under the All Writs Act, that it is necessary to ascertain "what is the usage, and what are the principles of equity applicable in [this] case," without mentioning the traditional four injunction requirements).

Thus alternatively under the All Writs Act, this Court must issue a preliminary injunction to avoid Mr. Williams' execution prior to the orderly resolution of this case.

### Conclusion

In balancing the equities, the Court should consider the lack of state interest in executing an innocent person versus Mr. Williams' applicable constitutional

rights, and the Court should grant Mr. Williams the preliminary injunction he seeks

in order to avoid irreparable harm. The Court should order that Mr. Williams'

execution be STAYED.

Respectfully submitted,

/s/ *Kent E. Gipson*
KENT E. GIPSON, Mo. Bar #34524
301 East 63rd Street
Kansas City, Missouri 64113
816-363-4400 / fax 816-363-4300
kent.gipson@kentgipsonlaw.com

-and-

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430
E.D. Mo. No. 5212907
P.O. BOX 1785
Manchester, MO 63011
636-207-7330 / fax 636-207-7351
lekomp@swbell.net

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was emailed this day to Michael Joseph Spillane, Assistant Attorney General, at mike.spillane@ago.mo.gov, this ___ day of January 2015.

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430